David H. BRUCE, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

Nos. 84–2154, 84–2610.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 12, 1985.

Decided May 3, 1985.

Dolly Ares, San Jose, Cal., for plaintiff-appellant.

Gary Allen, Washington, D.C., for defendant-appellee.

Before HUG, SCHROEDER and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Plaintiff Dr. David H. Bruce (Dr. Bruce) appeals the dismissal of his action seeking a tax refund. We affirm.

## I. FACTS.

Dr. Bruce invested $10,000 in Duncan Properties on the advice of his tax shelter attorney Harry Margolis (Margolis). Dr. Bruce subsequently claimed a tax deduction for his share of partnership losses incurred by Duncan Properties in 1977. The Internal Revenue Service (IRS) disallowed the deduction in 1981 and issued to Dr. Bruce a notice of deficiency for $1,971 in taxes and $665.87 in interest. Margolis subsequently paid the deficiency with a "trustee" check and then filed an amended return including a claim for refund which was signed "David H. Bruce per Harry Margolis." Following the IRS's denial of the refund claim, the present action seeking a refund of the $2,636.87 paid by Margolis was filed in Dr. Bruce's name.

At his deposition in September 1982, Dr. Bruce stated that he did not have to pay the additional assessed taxes under his fee arrangement with Margolis, that he had no anticipation of repaying the $2,636.87 paid by Margolis, and that the present tax refund case did not affect him financially at all. The government later filed a motion to dismiss based upon Margolis' alleged failure to comply with discovery requests. The government argued that such a sanction was appropriate because Margolis was the real party in interest due to his payment of the taxes in question.

Dr. Bruce and Margolis subsequently filed affidavits asserting that the payment of taxes by Margolis involved a loan which Dr. Bruce was obligated to repay. Dr. Bruce also stated in his affidavit that he had repaid Margolis with a check payable to the Ivory Corporation on June 15, 1983. At evidentiary hearings in April 1983 and March 1984, Dr. Bruce stated that his change in testimony regarding his liability for the assessed taxes was prompted by his review of the fee agreement with Margolis. However, Dr. Bruce's counsel admitted that there was no provision in the agreement relating to the payment of tax deficiencies.[1] Moreover, Dr. Bruce was unable to recall the terms of the "loan" he had received from Margolis, including when it was to be repaid.

The district court found that Dr. Bruce's change in testimony was not credible. The court concluded that Margolis' payment of the taxes was not a loan. Dr. Bruce's subsequent "repayment" was found to have been a voluntary action. Because Dr. Bruce was not the "person who made the overpayment" of taxes, the district court dismissed the action based upon Dr. Bruce's lack of standing to sue for a refund. *See* 26 U.S.C. § 6402(a).

## II. TIMELINESS OF APPEAL.

A timely notice of appeal was filed on June 15, 1984, with respect to the original judgment of dismissal (No. 84–2154). On that same date, Dr. Bruce filed a motion to vacate the judgment under Rule 60(b)(4), Fed.R.Civ.P. Although the district court purported to deny the Rule 60 motion in September 1984 (the "September Order"), the court was without jurisdiction to entertain the motion until the case was remanded by this court on October 10, 1984. *See Scott v. Younger*, 739 F.2d 1464, 1466 (9th Cir.1984).

Dr. Bruce filed a notice of appeal from the September Order on October 25 (No. 84–2610). The district court subsequently entered an amended order (following the remand from this court) denying the Rule 60 motion on October 31. Although Dr. Bruce did not refile his notice of appeal following entry of the amended order, the earlier notice of appeal (No. 84–2610) will be treated as filed on the same date as the entry of the amended order pursuant to Rule 4(a)(2), Fed.R.App.P. *See Cape May Greene, Inc. v. Warren*, 698 F.2d 179, 185 (3d Cir.1983); *Eason v. Dickson*, 390 F.2d 585, 588 (9th Cir.), *cert. denied*, 392 U.S. 914, 88 S.Ct. 2076, 20 L.Ed.2d 1373 (1968). The notice of appeal with respect to the denial of the Rule 60 motion is timely.

## III. STANDARD OF REVIEW.

The district court decided disputed factual matters before dismissing plaintiff's action for lack of standing. Standing is a threshold jurisdictional question in every federal case. *See EMI Ltd. v. Bennett*, 738 F.2d 994, 996 (9th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 567, 83 S.Ct. 508 (1984). In determining whether subject matter jurisdiction exists, "the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir.1983). It is only where the jurisdictional issue and the issue on the merits "are so intertwined that the question of jurisdiction is dependent on the resolution of the factual issues going to the merits" that the district court may not decide disputed factual issues prior to trial. *Id. See Sun Valley Gasoline, Inc. v. Ernst Enterprises, Inc.*, 711 F.2d 138, 139 (9th Cir.1983).

In the present case, Dr. Bruce may have a valid claim on the merits and nonetheless lack standing to receive the refund. *Cf.*

---

1. The fee agreement provided that Margolis was to receive a fee of one-third of any tax savings. In the event of a challenge to the tax planning by the IRS, Margolis was to pay the costs of defending the planning as well as any penalties and a pro rata share of interest that might be incurred. Margolis was also obligated to refund any fees paid with respect to tax savings overturned by the IRS.

*Lewis v. Knutson,* 699 F.2d 230, 237–38 (5th Cir.1983) (plaintiff's standing to prosecute suit as shareholder held not to overlap with merits of claim that defendants breached fiduciary duty). Because the standing issue is independent from the merits determination, it was proper for the district court to make factual findings and to decide the jurisdictional issue in this case.

■ The district court's factual findings on the jurisdictional issue must be accepted unless they are clearly erroneous. *See United States v. McConney,* 728 F.2d 1195, 1200 (9th Cir.) (en banc), *cert. denied,* — U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). However, the ultimate legal conclusion that Dr. Bruce lacked standing to obtain a refund is subject to *de novo* review. *See EMI Ltd.,* 738 F.2d at 996.

## IV. STANDING.

### A. Factual Findings

The fee agreement between Dr. Bruce and Margolis was silent regarding who would be liable for any tax deficiency. Other than Dr. Bruce's testimony at the evidentiary hearings and the affidavits filed by Dr. Bruce and Margolis, the payment of the taxes with a "trustee" check is the only evidence indicating that Dr. Bruce might have been responsible for repaying Margolis. However, the district court did not believe the affidavits or Dr. Bruce's testimony at the evidentiary hearings. The court instead believed Dr. Bruce's initial statements that he did not have to pay the additional assessed taxes under his fee ar-

rangement with Margolis, that he had no anticipation of repaying Margolis, and that he had no financial interest in this litigation. The credibility findings and the determination that Margolis' payment of the taxes was not a loan are not clearly erroneous.

### B. Legal Analysis

■ Although the district court's order of dismissal mentioned that Dr. Bruce lacked standing under § 6402(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 6402(a), the judgment entered by the court relied solely upon 28 U.S.C. § 1346(a)(1), the Title dealing with judicial procedure. We may affirm the district court's correct legal results even if they were reached for the wrong reasons. *Alcaraz v. Block,* 746 F.2d 593, 602 (9th Cir. 1984). Therefore, if Dr. Bruce lacked standing under either statute, the dismissal may be affirmed.[2]

■ Dr. Bruce relies upon 28 U.S.C. § 1346(a)(1) in arguing that the only standing requirement for obtaining a tax refund is that the plaintiff must have been assessed the tax in question. We reject Dr. Bruce's argument that any standing requirement imposed by § 6402(a) of the Internal Revenue Code would improperly contravene 28 U.S.C. § 1346(a)(1). The United States is free to place restrictions on its consent to be sued. *See, e.g., United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). For example, the procedural requirements of §§ 6511 and 7422(a) of the Internal Revenue Code of 1954, 26 U.S.C. §§ 6511 & 7422(a), have been held to present jurisdictional hurdles in addition to 28 U.S.C.

**2.** Under 28 U.S.C. § 1346(a)(1), the district court has concurrent jurisdiction with the United States Claims Court of "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected ...." 28 U.S.C. § 1346(a)(1). The Internal Revenue Code of 1954 contains various provisions relating to the procedures for obtaining a tax refund. First, the Code provides that no court action may be maintained until a claim for refund has

been filed with the Secretary of the Treasury. 26 U.S.C. § 7422(a). Second, the claim for an overpayment of tax must be filed "by the taxpayer," *id.* § 6511(a), with "taxpayer" being defined as "any person subject to any internal revenue tax." *Id.* § 7701(14). Finally, Section 6402(a) provides that if an overpayment has been made, the refund shall be made to "the person who made the overpayment." *Id.* § 6402(a).

§ 1346(a)(1). *See Crismon v. United States,* 550 F.2d 1205, 1206 (9th Cir.) (per curiam), *cert. denied,* 434 U.S. 807, 98 S.Ct. 38, 54 L.Ed.2d 65 (1977); *United States v. Rochelle,* 363 F.2d 225, 230–31 (5th Cir. 1966). Standing requirements under § 6402(a) of the Code do not contravene 28 U.S.C. § 1346(a)(1) because Congress possesses the authority to impose standing limitations in addition to § 1346(a)(1).

Dr. Bruce relies heavily on *Morse v. United States,* 494 F.2d 876 (9th Cir.1974), and *DeNiro v. United States,* 561 F.2d 653 (6th Cir.1977). In *Morse,* an unknown person paid income tax assessed against the plaintiff. Applying the Internal Revenue Code of 1939, we held that the plaintiff was a "taxpayer" as defined in the Code even though she had not paid the tax. *Morse,* 494 F.2d at 879–80. However, we expressed "no opinion as to whether [plaintiff] is actually entitled to the refund." *Id.* at 880. The case was remanded for further proceedings relating to the application of §§ 332(a)(1) and 3770(a)(1) of the Internal Revenue Code of 1939, 26 U.S.C. §§ 332(a)(1) & 3770(a)(1), the predecessor provisions to § 6402(a) of the 1954 Code. Thus, the *Morse* court left open the issue presented here. In *DeNiro,* the court stated that "one other than the actual payer of the tax may have standing to sue for a refund." *DeNiro,* 561 F.2d at 657. The court then concluded that the plaintiffs qualified as executors of an estate who could sue for a refund of the taxes paid by the decedent's estate. *Id.* The facts in *DeNiro* are distinguishable from those here.

The district court relied primarily on *Scanlon v. United States,* 330 F.Supp. 269 (E.D.Mich.1971), in concluding that Dr. Bruce lacked standing. In *Scanlon,* the plaintiff sought a refund of income tax withholdings assessed against him and paid by his employer. The plaintiff testified that he was unaware of the assessment against him, of the payment of the tax, and of the refund action until near the date of trial. *Id.* at 270. An agreement between plaintiff and his employer expressly provided that the employer assumed liability for

the tax. Concluding that § 6402(a) of the Code was "specific in limiting the refund of overpayments to the 'person who made the overpayment,'" the district court held that the plaintiff lacked standing to sue for a refund, even though he was the person assessed. *Id.* at 270.

The government argues that we should follow *Scanlon* and apply the plain language of § 6402(a) to bar plaintiff from obtaining a refund. However, § 6402(a) cannot be applied mechanically. There are several instances in which the phrase "the person who made the overpayment" cannot be literally interpreted. In the case of a credit, no one technically makes an overpayment yet the credit is refunded to the person entitled to receive it. *See Sorenson v. Secretary of the Treasury,* 752 F.2d 1433, 1442–43 (9th Cir.1985). *See also* 26 C.F.R. § 301.6402–2(e) (1984) (permitting executor or legal representative of an estate to receive refund even though the decedent was the person who made the overpayment); 26 C.F.R. § 31.6402(a)–2(b) (1984) (permitting employee to receive refund of excess tax withheld by employer even though employer made actual "overpayment" of withheld tax to the IRS). We conclude that the facts of each case must be analyzed to determine whether a plaintiff has standing to obtain a refund under § 6402(a).

■ On the facts of this case, we conclude that the district court did not err in finding that Dr. Bruce was not entitled to receive a refund. Dr. Bruce has no financial interest in this litigation; therefore, he lacks standing to obtain a refund under § 6402(a) of the Internal Revenue Code. Whether Margolis would have standing to obtain a refund is not before us.

## V. RULE 60(b) MOTION.

■ The denial of a motion under Rule 60(b), Fed.R.Civ.P., may be set aside only if the denial constitutes an abuse of discretion. *In re Burley,* 738 F.2d 981, 988 (9th Cir.1984). Dr. Bruce sought to have the order of dismissal declared null and void

under Rule 60(b)(4) because the government's motion to dismiss allegedly failed to apprise Dr. Bruce that standing was an issue in the case. The fact that Margolis, not Dr. Bruce, was the real party in interest was the basis of the government's motion to dismiss as a discovery sanction. Although the government's papers did not directly address the standing issue, there are numerous references in the record to the standing problem. For example, Dr. Bruce's counsel discussed the standing issue at the June 30, 1983 hearing. The district court did not abuse its discretion in denying Dr. Bruce's Rule 60(b) motion.

AFFIRMED.