**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE AUGUSTINE PENA, III,

*Debtor*,

AUGUSTINE PENA, III,

*Appellant.*

No. 19-60029

BAP No.
18-1098

OPINION

Appeal from the Bankruptcy
Appellate Panel for the Ninth Circuit
Spraker, Lafferty, and Brand, Bankruptcy Judges, Presiding

Submitted August 14, 2020[*]
Pasadena, California

Filed September 4, 2020

Before: Consuelo M. Callahan, Patrick J. Bumatay, and
Lawrence VanDyke, Circuit Judges.

Opinion by Judge Bumatay

---

   [*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY**

### Bankruptcy

The panel affirmed the Bankruptcy Appellate Panel's decision affirming the bankruptcy court's denial of a Chapter 7 debtor's application to recover funds in the bankruptcy court's registry derived from rent payments on his encumbered properties.

While managing the debtor's rental properties, the bankruptcy trustee attempted to pass along the rent payments to holders of security interests in the properties, but the security holders did not accept the funds. The trustee later abandoned the rental parcels, deposited remaining unclaimed funds in the bankruptcy court registry, and closed the bankruptcy case. The debtor applied to recover the unclaimed funds without reopening the bankruptcy.

The panel held that it had jurisdiction over the debtor's appeal because the debtor had prudential standing and was a "person aggrieved" by the bankruptcy court's order. Further, the absence of an opposing party, due to the trustee's dismissal at the close of the bankruptcy, did not prevent the panel from exercising jurisdiction.

Turing to the merits, the panel held that the trustee did not abandon the rents by abandoning the properties from which they were collected. Accordingly, the funds remained the property of the bankruptcy estate. Because the rents did

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

not constitute an estate surplus, the debtor was not entitled to the funds.

## COUNSEL

Sharlene F. Roberts-Caudle, Exeter, California, for Appellant.

## OPINION

BUMATAY, Circuit Judge:

Chapter 7 debtor Augustine Pena III appeals the denial of his application to recover funds in the bankruptcy court's registry derived from rent payments on his encumbered properties. The funds remain unclaimed, and Pena contends that he is entitled to them. The bankruptcy court and Bankruptcy Appellate Panel ("BAP") disagreed. We affirm.

## I.

Augustine Pena filed for Chapter 11 bankruptcy in April 2012. At the time his bankruptcy commenced, Pena owned 30 parcels of real estate, mostly rental properties. *In re Pena*, 600 B.R. 415, 417–18 (B.A.P. 9th Cir. 2019). After Pena used cash collateral in an unauthorized manner, the bankruptcy court converted his case to a Chapter 7 bankruptcy and appointed a trustee. *Id.* at 418. Pena immediately appealed the order, first to the district court, and then to this court. *Id.* He lost. *Id.*

While Pena's appeals were pending, the trustee managed several of Pena's rental properties located in California under a court order, collecting rents, depositing them in the

estate, and disbursing them as appropriate. *Id.* These properties were purchased using a deed of trust, so the trustee passed along the rents from these parcels as cash collateral to the security holders of the respective security interests. *Id.*

The security holders, however, did not accept the rent funds,[1] despite the trustee's multiple efforts to complete payment. *Id.* Nevertheless, the trustee continued to collect rents from these properties until Summer 2014, at which point she abandoned the rental parcels as part of her administration of the Chapter 7 estate. *Id.*

The trustee's unsuccessful efforts to distribute the rents ended in February 2016, when she deposited almost $52,000 in remaining unclaimed funds in the bankruptcy court registry. *Id.* Ten months later, in December 2016, she closed Pena's bankruptcy case, listing the unclaimed funds (and their rightful owners) in her final account, and paying the rents into the bankruptcy court registry. *Id.* at 418–19. Pena did not object to the court's final decree approving the trustee's actions. *Id.*

In March 2018, Pena filed an application seeking to recover the unclaimed funds without reopening the bankruptcy. *Id.* at 419. The bankruptcy court rejected Pena's application, finding that the trustee appropriately administered the rents by paying them into the court's registry after failing to complete payments. *Id.* Moreover, the court found that under the Bankruptcy Code, the estate, and by extension Pena's creditors, were entitled to the rent

---

[1] The record reflects that several of the security holders refused to accept the funds because the properties were in foreclosure or because the bank had no records of Pena being a client.

payments. *Id.* The court also pointed out that at the time the bankruptcy closed, Pena still had $411,000 in unpaid, unsecured debt. *Id.* at 420.

On appeal, in a careful, well-reasoned opinion, the BAP affirmed the bankruptcy court, holding that the rents were separate assets from the underlying rental properties, and were, therefore, not abandoned along with the parcels. *Id.* at 422–24. On this basis, the BAP concluded that Pena had no interest in the funds. *Id.* at 424. The BAP declined, however, to determine what rights any other parties may have in the funds. *Id.*

Pena appealed the BAP's decision to this court.

## II.

We must first assure ourselves that we have jurisdiction over Pena's appeal. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." (simplified)). As Pena's bankruptcy did not result in a surplus and no appellee appears before us, this case raises standing and adversity questions.

## A.

In the bankruptcy context, we have adopted a prudential test to determine whether an appellant has standing to appeal as a "person aggrieved" by the bankruptcy order. *In re P.R.T.C., Inc.*, 177 F.3d 774, 777 (9th Cir. 1999). Under this standard, an appellant is "aggrieved if the bankruptcy court order diminishes the appellant's property, increases his

burdens, or detrimentally affects his rights." *In re Sisk*, 962 F.3d 1133, 1143 (9th Cir. 2020) (simplified).

"Ordinarily, a [Chapter 7] debtor cannot challenge a bankruptcy court's order unless there is likely to be a surplus after bankruptcy." *In re P.R.T.C.*, 177 F.3d at 778 n.2. In such cases, the "trustee, as the representative of the bankruptcy estate, is the proper party in interest, and the only party with standing to prosecute causes of action belonging to the estate." *Haskins v. Farmers Home Admin.*, 87 F.3d 1319 (9th Cir. 1996) (unpublished) (simplified). Nevertheless, this court has assumed standing where a debtor claimed entitlement to property that had allegedly been abandoned by the bankruptcy trustee. *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 708–10 (9th Cir. 1986).

We hold that Pena has prudential standing to appeal the BAP decision. The fact that Pena's Chapter 7 estate did not result in a surplus does not address his central claim here: that the unclaimed funds are not part of the estate because they were abandoned by the trustee. This makes Pena's case analogous to *Sierra Switchboard*, where the court implicitly assumed standing to decide whether the debtor was entitled to a particular piece of property purportedly abandoned by the trustee. *Id.* at 708. Accordingly, we find that Pena is a "person aggrieved" by the bankruptcy court's order.

## B.

In this case, the trustee was dismissed at the close of the bankruptcy, and therefore no party opposes Pena's appeal. Although infrequent, the absence of an opposing party does not prevent us from exercising jurisdiction here. As we recently explained, "[o]ur court has regularly considered

bankruptcy appeals with only one party appearing." *In re Sisk,* 962 F.3d at 1144.

Our practice of considering uncontested appeals in the bankruptcy context accords with longstanding tradition. The selective exercise of non-adversarial jurisdiction, despite its origins in the Roman civil code, has deep roots in English and American law. *See* James E. Pfander & Daniel D. Birk, *Article III Judicial Power, the Adverse-Party Requirement, and Non-Contentious Jurisdiction*, 124 Yale L.J. 1346, 1405–06, 1410–16 (2015). Historically, English courts— and later, American colonial courts—regularly exercised "non-contentious" jurisdiction in a wide variety of cases, including those involving land transfers, admiralty, marriage, probate proceedings, equitable receiverships, and bar admissions. *Id*. at 1411–13. Many of these practices were received into American law during the Founding era. *Id.* at 1414–16.

Likewise, in modern practice, federal courts regularly exercise jurisdiction over non-contentious cases in a variety of contexts. *See id.* at 1444 ("Judicial activity in uncontested bankruptcy proceedings, the entry of plea agreements, and the registration of settlements enjoy a similar foundation in positive law."); Martin H. Redish & Andrianna D. Kastanek, *Settlement Class Actions, the Case-or-Controversy Requirement, and the Nature of the Adjudicatory Process*, 73 U. Chi. L. Rev. 545, 587 n.157 (2006) ("It suffices to note that the bankruptcy scheme is a narrow exception to the adverseness requirement."); James E. Pfander & Daniel Birk, *Adverse Interests and Article III: A Reply*, 111 Nw. U. L. Rev. 1067, 1072 (2017) ("[F]ederal courts have long been permitted to entertain naturalization and voluntary bankruptcy petitions . . . in which no adverse party necessarily appears before the court.").

Given this long tradition of exercising jurisdiction over unopposed matters in bankruptcy law and analogous contexts, we do not see the lack of adverseness as an obstacle to our jurisdiction here.

## III.

Turning to the merits, Pena contends that the trustee abandoned the rents by abandoning the properties from which they were collected, thus returning them to his possession.  We disagree.  As an initial matter, Pena's argument fails because *rental properties* and *rents* collected from those properties are separate, discrete classes of estate property.  *See* 11 U.S.C. § 541(a)(6) (categorizing "rents . . . of or from property of the estate" as a discrete class of estate property);[2] *see also In re Lindsie Pham*, No. 8:12-BK-18847-CB, 2019 WL 77505, at *5 (C.D. Cal. Jan. 2, 2019) ("[A]bandonment of real property does not also abandon personal property that is related to, but separable from the real property.").

Thus, in order to recover, Pena must demonstrate that the *rents* themselves—and not just the underlying properties— were abandoned by the trustee under § 554(a).  A trustee cannot abandon property under this provision by accident. *See Catalano v. C.I.R.*, 279 F.3d 682, 686 (9th Cir. 2002) (rejecting appellant's assertion that a trustee's actions could "accomplish[] a *de facto* abandonment" where "no formal abandonment was obtained" under the Code).  Rather, abandonment under § 554(a) is a "formal relinquishment of the property at issue from the bankruptcy estate …. [which] requires notice and a hearing." *Id.* at 685.  A trustee's intent

---

[2] All subsequent statutory references are to Title 11 of the United States Code unless otherwise indicated.

to abandon estate property, therefore, must be clear: "[T]here is no abandonment without notice to creditors." *Sierra Switchboard*, 789 F.2d at 709.

Problematically for Pena, nothing in the record indicates any intent on the trustee's part to abandon the rent payments. The trustee's notices of abandonment to creditors unambiguously refer to her abandonment of real property and contain no evidence of an intent to abandon related rent payments. Nor does the record show that any hearings were held for the purpose of abandoning the rent payments.

Pena's abandonment claim is also undercut by his own actions in the proceedings below. Pena made no objection to the trustee's attempts to distribute the rent funds to his secured creditors during the pendency of the estate and only advanced his novel theory of entitlement well over a year after the estate closed. Pena also conceded that the rents were still property of the estate even after the trustee's abandonment of the real properties. *See In re Pena*, 600 B.R. at 419–20.

In the absence of affirmative evidence of abandonment, we find the funds remain the property of the bankruptcy estate. Pena, therefore, has no interest in the rents unless they constitute an estate surplus. *See* § 726(a) (requiring the trustee to satisfy all outstanding obligations, plus interest, before distributing any estate proceeds to the debtor); *see also In re Riverside-Linden Inv. Co.*, 945 F.2d 320, 323 (9th Cir. 1991) ("When all claims against a Chapter 7 debtor have been paid, the surplus in the estate, if any, is to be paid out as interest to the claimants." (citing § 726(a)(5))). No surplus exists here—when his bankruptcy case closed, Pena's unpaid debts exceeded $411,000. Consequently, Pena is not entitled to the funds.

**IV.**

Pena's alternative theory asserts, in essence, that he is entitled to the unclaimed rents because no one else is. Specifically, Pena contends that "[i]n the absence of any other available claimant, it is difficult to see how equity favors keeping the Funds out of circulation forever." This argument falls flat.  First, Pena bears the burden of affirmatively establishing *his* entitlement to the funds—a burden that he has not met.  He cannot recover the funds by simply alleging that other parties are not entitled to them. Second, Pena's claim that the funds will remain in limbo indefinitely is incorrect—under 28 U.S.C. § 2042, the funds will escheat to the U.S. Treasury if left unclaimed for five years.

Moreover, Pena's failure to object to how the rents were administered below belies any argument on appeal that they were unadministered or that the secured creditors are not entitled to them.[3]  In her final account, the trustee detailed the interests held by various security holders in the rents. Pena made no objection to the trustee's determinations regarding ownership.  The bankruptcy court, in its final decree, then approved of the trustee's disbursement of the unclaimed funds into the court registry in the name of the secured creditors, and closed the case.  And once again, Pena failed to object.  Thus, Pena's own conduct below undermines his contention that the secured creditors had no interest in the funds.

---

[3] We decline to address any claim of "technical abandonment" under § 554(c).  While Pena referenced the provision in his brief, he failed to develop any argument as to why it entitles him to relief.  "[I]ssues raised in a brief that are not supported by argument are deemed abandoned." *Martinez-Serrano v. I.N.S.*, 94 F.3d 1256, 1259 (9th Cir. 1996).

*    *    *

The BAP correctly found that the rents belonged to the bankruptcy estate. Accordingly, Pena has no right to them.

**AFFIRMED.**